UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEROY ALFORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 16-2170 (RCL) |
| ) | |
| DEPARTMENT OF ) | |
| VETERANS AFFAIRS, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

I. **Background**

Leroy Alford is a retired disabled veteran who had been receiving certain vocational rehabilitation and employment benefits until they were discontinued by the Department of Veterans Affairs (VA) on April 22, 2016. In short, in parallel with other efforts, Mr. Alford has filed requests under the Freedom of Information Act (FOIA), 5 U.S.C. §552, for records that would shed light on the VA's decision to terminate his participation in the vocational rehabilitation program and help him prepare a possible time-sensitive appeal.

The precise factual record in this case is somewhat difficult to distill.[1] The parties disagree on such basic matters including exactly how many FOIA requests were filed and when. Mr. Alford appears to have changed his mind at various points in his communications with the VA about

---

[1] For example, the Motion for summary judgment attaches 11 numbered exhibits (not including Ms. Grant's first declaration), see [7-3], but the motion, the accompanying memorandum of points and authorities, and the defendant's statement of facts only cite to one of those, Exhibit 1, as establishing the date and scope of Mr. Alford's initial FOIA request. The only other explicit description or reference to any of the VA's numbered exhibits comes in its reply brief, in which counsel attempts to dismiss potentially serious deficiencies in the first declaration she filed in the case. See [13] at *5. See also discussion of Alford's third FOIA request, *infra*.

1

whether he was in fact making a FOIA request.[2] The VA's counsel, on the other hand, characterizes Mr. Alford as having made three separate FOIA requests. *See* [7] at *1 and n. 1. After spending an inordinate amount of time piecing together a complete timeline from the exhibits each side has included with their filings, the Court counts four communications from Mr. Alford to the VA that either explicitly were FOIA requests, or that the VA construed as FOIA requests.

First, on May 18, 2016, Mr. Alford informed the VA that he wished to review his vocational rehabilitation case file. Mr. Alford made a second request, on June 2, 2016, reiterating the first.[3] The VA processed these as FOIA requests and, on July 14, 2016, released to Mr. Alford his entire Counseling/Evaluation/Rehabilitation (CER) folder, which included an Individual Written Rehabilitation Plan (IWRP) dated June 7, 2011. [7-2] at paras 8-9.

On September 8, 2016 Mr. Alford transmitted via fax to the VA what can be accounted for present purposes as his third FOIA request, which references an earlier but unspecified "Second [FOIA] Request." [1-1] at *23. He emailed the same document to his point of contact at the VA the following day. In this request, Mr. Alford asked for "copies of any [IWRP not already produced,] dated after 06/06/11." *Id.* Having received no response from the VA, he emailed the agency on October 27, 2016 to follow-up on his request. Pls. Complaint [1] at para 6. Without a response from the VA, Mr. Alford filed suit in this Court on October 31, 2016.

---

[2] Curiously, even now Mr. Alford disputes that his communications to the VA on May 18, 2016 and June 2, 2016 constituted FOIA requests, *see* Pl.'s Resp. to Def.'s Stmt. of Material Facts in Dispute [10] at *21-22, despite a June 3 email that suggests he was submitting a FOIA request, a September 8, 2016 letter that references an earlier, unspecified "Second [FOIA] Request," [1-1] at *23, and the December 5, 2016 letter, [10] at *33, which appears to have a subject line "Second [FOIA] Request," all of which indicate he had understood there to be a previous FOIA request. Because 1) it appears Mr. Alford, at least at one time, thought himself to be submitting FOIA requests during his correspondence with the VA, 2) the VA processed those requests in accordance with FOIA, and, 3) in any event, this Court construes liberally the filings of *pro se* litigants, the Court will proceed with a standard FOIA analysis.

[3] The VA refers to Mr. Alford's submissions of May 18, 2016 and June 2, 2016 as "requests," *i.e.*, in the plural. *See* [7] at *1. Mr. Alford considered the June 2016 FOIA request to have been separate from his request for administrative review of his records. *See* [7-3] at **4, 8. His subsequent communications in September 2016 and December 2016, however, each either referred to or bore the subject line "Second Freedom of Information Act (FOIA) Request."

On December 5, 2016, Mr. Alford submitted his fourth request,[4] which appears to feature as a subject line the words, "Second [FOIA] Request." [4-1] at *7. This time, Mr. Alford asked for "all records[] contained in my [vocational rehabilitation] file folder, [and] any emails between VA personnel concerning any discussions" regarding his entitlements after the VA's July 14, 2016 document release to Mr. Alford. After again receiving no response from the VA, Mr. Alford filed a Motion [4] for leave to amend his complaint on December 27, 2016, to include his expanded request in the present lawsuit. The Court granted leave to file his amended complaint on January 11, 2017, [5], and Mr. Alford filed his First Amended Complaint [6] that same day.

On January 30, 2017, the VA filed its Motion for summary judgment, [7], arguing it conducted a reasonable search for the records Mr. Alford requested on May 18, 2016 (and, impliedly, June 2, 2016), and produced to Mr. Alford his CER folder in its entirety, which it says fulfills his request. The VA has also represented that, in reference to Mr. Alford's September 8, 2016 request, it has adequately searched for any further IWRPs, and that none exist. 2d Grant decl. at para 6. Finally, having failed either to oppose Mr. Alford's Motion [4] for leave to amend his complaint or respond to the amended complaint once filed, *see* Fed. R. Civ. P. 15(a)(3), and without so much as a citation to the applicable regulation (which the Court surmises to be 38 C.F.R. §1.559(f)), the VA moves this Court to dismiss Mr. Alford's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for his supposed failure to exhaust administrative remedies related to his fourth FOIA request. [7] at n. 1.

For his part, Mr. Alford disputes the adequacy of the VA's searches and production. *See* [10]; [17]. He also has requested the Court to order the VA to pay his costs for bringing the present

---

[4] Counsel for the VA finally entered an appearance in this case the following day.

3

action, [4-1] at *3, and has since moved for leave to file a second amended complaint and for the Court to hold a hearing on his case. *See* [18].

Upon consideration of the VA's Motion [7] for summary judgment, its embedded Motion to dismiss the Amended Complaint, [7] at n. 1, Mr. Alford's opposition, [10], the VA's reply thereto, [13], and Mr. Alford's surreply, [17], as well as Mr. Alford's requests for costs and his motion [18] for leave to file a Second Amended Complaint to request a hearing, and the entire record before the Court, the VA's motion for summary judgment [7] is granted-in-part and denied-in-part; the VA's motion to dismiss Mr. Alford's first amended complaint is denied; Mr. Alford's request for costs is granted; and Mr. Alford's motion to amend his complaint to request a hearing [18] is denied.

## II. Legal Standards

### a. Summary Judgment in FOIA Cases

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(a). As applied in a FOIA case, an agency defendant may be entitled to summary judgment if it demonstrates that 1) no material facts are in dispute, 2) it has conducted an adequate search for responsive records, and 3) each responsive record that it has located has either been produced to the plaintiff or is exempt from disclosure. *Miller v. U.S. Dep't of Justice*, 872 F. Supp. 2d 12, 18 (D.D.C. 2012) (*citing Weisberg v. DOJ*, 627 F.2d 365, 368 (D.C. Cir. 1980)).

When an agency receives a FOIA request it is obligated to "conduct a search reasonably calculated to uncover all relevant documents." *Truitt v. Dep't of State*, 897 F.2d 540, 541 (D.C. Cir. 1990) (internal quotation marks omitted). The adequacy of a search, therefore, depends not on "whether any further documents might conceivably exist," *id.*, but on the search's design and

scope. An agency must accordingly show that it made "a good faith effort to conduct a search for the requested records, using methods [that] can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

The agency bears the burden of showing that it complied with FOIA and it may meet this burden "by providing 'a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials ... were searched.'" *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 313–14 (D.C. Cir. 2003). The plaintiff may then "provide 'countervailing evidence' as to the adequacy of the agency's search." *Id.* at 314. If a review of the record created by these affidavits "raises substantial doubt," as to a search's adequacy, "particularly in view of 'well defined requests and positive indications of overlooked materials.'" summary judgment would not be appropriate. *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (quoting *Founding Church of Scientology v. Nat'l. Sec. Agency*, 610 F.2d 824, 837 (D.C. Cir. 1979)).

"Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard*, 926 F.2d at 1200. They may, however, be rebutted by evidence of bad faith. *Id.*

b. Administrative Exhaustion in FOIA Cases

Generally, FOIA requesters "must exhaust administrative appeal remedies before seeking judicial redress." *Citizens for Responsibility and Ethics in Washington v. FEC*, 711 F.3d 180, 182 (2013). "But if an agency does not adhere to certain statutory timelines in responding to a FOIA request, the requester is deemed by statute to have fulfilled the exhaustion requirement." *Id.* (citing 5 U.S.C. § 552(a)(6)(C)(i)).

## III. Analysis

A. Defendant's Motion for Summary Judgment

On May 18, 2016 and June 2, 2016, Mr. Alford asked to review his vocational rehabilitation case file. The VA's declarant describes in detail where such files are located. First Grant decl. [7-4] at paras. 5-8. The responsive CER folder was located, processed, and eventually mailed to him on July 14, 2016. *Id.* at para 15. Although the VA's proffers in this regard seem, by themselves, to reflect an adequately reasonable search and production of documents, the agency's own submissions show otherwise. The plaintiff's requests were to review his vocational rehabilitation case file, [7-3] at *3, which he also referred to as his "VOC rehab records." [7-3] at *4. The VA searched for and produced to him only his hard-copy CER folder, and have failed to make an express representation to this Court that the CER folder would contain all the documents to which Mr. Alford's request referred. In fact, one of the defendant's own exhibits, [7-3] at *28 (a screenshot of a portion of Mr. Alford's folder in an electronic database listing what appear to be the titles or descriptions of several potentially responsive documents), the defendant's subsequent search of an electronic database for updated versions of a document contained in the CER folder, *see* discussion of Alford's third FOIA request, *infra.*; 2d Grant decl. at para 5, and statements made by the defendants in their most recent filing, [20] ("[the electronic database] contains electronically stored case notes that were made by Vocational Rehabilitation ("VR") counselors concerning Plaintiff, as well as an electronic log of every action taken in Mr. Alford's case .... Case notes are typically created by VR counselors to summarize conversations, highlight electronic mail received, and to identify actions taken on the case."), all indicate to the Court that the VA should have searched beyond the file cabinet containing Mr. Alford's CER file for information responsive to his request. Accordingly, the Court must deny summary judgment to the VA with respect to the May and June requests.

The VA's actions taken with respect to Mr. Alford's request of September 8, 2016, are even more troublesome. In his September request, in light of an IWRP that had been included in his produced CER folder nearly two months earlier, Mr. Alford asked for "copies of any [IWRP not already produced to him,] dated after 06/06/11." [1-1] at *23. The VA failed to respond. The agency's excuse for its silence, it says, is that "Mr. Alford received a copy of his entire CER folder on July 14, 2016. In addition, there is no IWRP dated for June 6, 2011." First Grant decl., [7-4] at para 17.

The VA's representation makes it apparent that the VA misread Mr. Alford's request in at least two ways. First, somehow the VA did not understand that Mr. Alford, having received his entire CER folder, was asking for one or more documents that, if they existed, were not included in that folder. Second, the VA failed to notice that Mr. Alford's request clearly stated that he sought any IWRP dated *after* June 6, 2011. Despite certain aspects of the record before the Court being difficult to sort through, the Court finds it difficult to grasp what exactly about Mr. Alford's September request might have been confusing to the VA, and why the VA thought it an acceptable course of action to simply not to a disabled veteran's request for records about himself as they might relate to a time-limited appeal of a denial of benefits. The fact that Alford's CER folder had already been produced gave no reason to be non-responsive to a request for something other than the exact thing that had already been released. The VA's July 14 production and Alford's September 18 request did not cross in the mail – Alford's September request clearly indicates that he had received and reviewed what the agency had already provided to him, and that he was requesting something beyond what he had been given.

Regarding the VA's second misreading of his request, the Court finds it perturbing not merely that agency personnel ignored the word "after" when they initially received the request,

but that it (and, apparently counsel) continued to do so up until the filing of the VA's reply brief on its motion. To that end, the Court finds incredulous counsel's characterization that repeatedly omitting the word "after" from how it construed the scope of Alford's request is a mere "obvious typo." [13] at *5. At minimum, that "typo" is *prima facie* evidence that the VA did not read Mr. Alford's FOIA request correctly, which is a legally relevant fact that potentially relates to the scope of the agency's search. And if it were as obvious as counsel says, counsel should have had it corrected before filing the sworn document with the Court.

Nevertheless, the Court does not agree with Mr. Alford that these errors evince bad faith on the part of the government in this proceeding. *See* [10] at *15-18. In fact, if indeed the VA interpreted Mr. Alford's request as only to produce a single document on a specific date, that it nevertheless revisited the matter looking for documents outside of the dates it apparently thought Mr. Alford was asking for, *see* First Grant decl. at paras. 18, 23; 2d Grant decl. at para. 6,[5] is evidence of good faith, at least with respect to this litigation.[6] Regardless of the VA's initial failure to respond to Mr. Alford's FOIA request in a timely manner and despite the agency's and counsel's long-standing blind-spot for the word "after" that so clearly appeared in Mr. Alford's request, the Court has no basis to find that the agency has acted in bad faith in this litigation.

That said, the record in this case shows that there are two databases where Mr. Alford's IWRPs might be found: the geographically-egalitarian monikered Corporate Waco Indianapolis New Jersey Roanoke Seattle (CWINRS) Case Management System, and the far more clear and easier to type Benefits Delivery Network (BDN) system. The VA has represented that the BDN

---

[5] Inexplicably, Ms. Grant again characterizes Mr. Alford's request as being for an IWRP "developed in June 2011." 2d Grant decl. at para 6. The VA is saved on this point only because it in fact reviewed the document log for responsive files for the period of June 2010 through April 2016. *See id.*

[6] The VA's decision to "revisit" Mr. Alford's file came one day before counsel filed a Motion [3] to extend its deadline to respond to Mr. Alford's complaint.

system, which originally housed IWRPs, is obsolete and is no longer used "for any purpose." 2d Grant decl. at para 7 (noting a sunset date for BDN of April 7, 2017). Although there were previously some discrepancies between what data was successfully migrated from BDN to CWINRS, *see* Pl. Ex. B, Review of Quality Instrument, at *3 (4th qtr 2010, General Comment 4 – "Counselor should ensure that BDN and CWINRS data are consistent"), the record suggests those have now been corrected, at least as they related to Mr. Alford's file. Pl. Ex. C, Checklist for Proposed Discontinuance (notating that BDN and CWINRS have both been updated as of April 22, 2016). The VA avers that "If another IWRP [were] developed for Leroy Alford, it would have been highlighted in the [CWINRS] document log."[7] 2d Grant decl. at para 5. The VA's declarations describing its search of the CWINRS system are sufficiently detailed to satisfy the Court that the agency conducted a sufficient search for any other IWRP related to Mr. Alford. Because there were none in the system to produce, the Court grants summary judgment to the VA as to Mr. Alford's third FOIA request.[8]

B. Defendant's Motion to Dismiss the Amended Complaint

Mr. Alford's amended complaint contains allegations related to his fourth FOIA request. That request stems from his December 5, 2016 letter, requested some of the same information as he had previously, but added a further request for related emails. The defendant argues that Mr. Alford has failed to exhaust his administrative remedies with respect to this request, and that it therefore should be dismissed. [7] at *1 n. 1. Assuming Mr. Alford's request was properly filed,[9]

---

[7] The Court notes that it took surprisingly long for the VA to express the quoted fact clearly. Both in Ms. Grant's first declaration and in counsel's accompanying briefs, the defendant emphasizes that CWINRS tracks all documents "entered into the system," without ever stating positively and unequivocally that IWRPs are among the categories of documents that always would be entered into that system. Without the quoted sentence in Ms. Grant's second declaration, the Court would have been unable to grant summary judgment to the VA as to Mr. Alford's third request.
[8] As this is a FOIA case, the Court was not called upon and makes no determination as to whether regulations may have required the VA to update Mr. Alford's IWRP annually.
[9] The VA has not argued otherwise.

5 U.S.C. § 552(a)(3)A)(ii), the VA's response would have been due to him by January 4, 2017. *See* 5 U.S.C. § 552(a)(6)(A). The record does not show that the VA responded to his request by that date, and Mr. Alford is therefore deemed to have exhausted his administrative remedies. *See id.* at § 552(a)(6)(C). He did not file his First Amended Complaint that included the allegations concerning his December 5, 2016 request until January 11, 2017. [6].

The Court suspects that, had counsel actually read the principal case she cited to as grounds for her motion to dismiss Mr. Alford's amended complaint, *Citizens for Responsibility and Ethics in Washington v. FEC*, 711 F.3d 180 (2013), she would not have found it fit to include such a frivolous argument, even as a footnote not otherwise addressed in her filings. In fact, the sentence *immediately following* that which she quoted as direct support for the proposition that administrative exhaustion is generally required in FOIA cases, explicitly cites to the statutory carve-out that squarely applies in cases such as this one, where the agency has failed to respond to the FOIA requester in a timely manner. *Id.* at 182 ("As a general matter, a FOIA requester must exhaust administrative appeal remedies before seeking judicial redress. *But if an agency does not adhere to certain statutory timelines in responding to a FOIA request, the requester is deemed by statute to have fulfilled the exhaustion requirement.*") (emphasis added).[10]

Even if the VA could be said to have responded to Mr. Alford's fourth request in some general way that might arguably make §552(a)(6)(C)(i) inapplicable, the Court would still have to analyze defendant's motion to a far greater extent than the 203-word footnote would suggest. Failure to exhaust administrative remedies in a FOIA matter "is not jurisdictional because the

---

[10] Because, as described earlier in this opinion, there appears to have been so many lapses in competence in this case, the Court will not go so far as to question whether there has been a violation of counsel's duty of candor to the Court. But it is telling that the *pro se* plaintiff in this matter did take the time to read the cases counsel cited – even if only in her footnotes – and correctly found her use of certain quotations to be wholly unsupportive of the propositions for which she used them.

10

FOIA does not unequivocally make it so." *Wilbur v. C.I.A.*, 355 F.3d 675, 677 (D.C. Cir. 2004) (*per curiam*) (quoting *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003)). Rather, in FOIA litigation, exhaustion is a jurisprudential doctrine that can bar judicial review if *both* the "particular administrative scheme" at issue and the "purposes of exhaustion" would support that conclusion.

The D.C. Circuit has squarely held that the FOIA's administrative scheme "favors treating failure to exhaust as a bar to judicial review." *Hidalgo*, 344 F.3d at 1259. *See also* 5 U.S.C. §552(a)(3); 38 C.F.R. § 1559(f). The purposes of exhaustion include 1) preventing premature interference with agency processes, 2) giving the parties and the Court the benefit of the agency's experience and expertise, and 3) to compile an adequate record for review. *See Wilbur*, 335 F.3d at 677.

Although the FOIA's administrative scheme tends to "favor[] treating failure to exhaust as a bar to judicial review," *Hidalgo*, 344 F.3d at 1259, that same scheme also requires agencies to be responsive to FOIA requests in the first instance, and with certain particularity. *See* 5 U.S.C. §552(a)(6); 38 C.F.R. §§1.557(c), 1559(d). With respect to Mr. Alford's fourth request (and, until the VA filed its motion for summary judgment, his third, as well), the VA failed in this regard. Further, Alford cannot be said to have bypassed the agency's administrative process because the agency's failure to acknowledge his request both violated its own regulations, *see* 38 C.F.R. § 1557(a) (requiring acknowledgement of requests); *id.* at § 1557(d) (governing the VA's procedure in making adverse FOIA determinations, including notice to the requester of his appellate rights), and denied him the opportunity to comply with its regulations. *See id.* at § 1559(d) (requiring an appeal to "clearly identify the determination being appealed"). The second purpose of exhaustion, allowing the parties and the Court to benefit from the agency's experience and expertise, also does not favor dismissal here. The VA's months-long silence as to Mr. Alford's latter two requests for

a limited set of records about himself, while his appellate clock was ticking regarding his benefits denial, indicates a pattern of behavior suggesting that experience and expertise was not forthcoming, absent this litigation. Similar reasoning applies with respect to the completeness of the record for this Court to review, regarding which this Court felt the need to order counsel for the VA to supplement the record explaining what exactly a potentially critical document was. *See* [19].[11] The defendant's motion to dismiss is thus denied.

C. Costs

Mr. Alford has asked the Court to award unspecified costs under 5 U.S.C. § 552(a)(4)(E). [6]; [18]. The only cost established on the record of this matter is the fee that accompanied Mr. Alford's filing his complaint. It appears that Mr. Alford's grounds for asking for costs is that the defendant failed to respond to his FOIA request "within the time permitted" by the FOIA. Section 552(a)(4)(E) provides, in relevant part, that, "The court may assess against the United States . . . litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." A plaintiff is deemed to have substantially prevailed if he secures "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii)(II).

It should be noted that this case should have been the most straightforward FOIA matter the Court has handled recently. Mr. Alford's requests were perhaps the furthest things possible from a fishing expedition - he did not ask for broad, vague categories of documents that might reside in dark or forgotten corners of the bureaucracy without any idea of what might come up. He asked for specific sets of fairly recent documents related to a single individual (himself), for whom

---

[11] Even in its response to that order, [20], the VA failed to take advantage of a potential opportunity to inform the Court that it had taken any steps to process Mr. Alford's fourth FOIA request.

12

he possessed all personally identifiable information. For its part, the VA appears to have begun the process being mostly accommodating and responsive, despite the fact that it has not adequately explained to this Court why it failed to search its electronic database in addition to its hard-copy files. But, totally inexplicably, the VA then changed course and ignored Mr. Alford's subsequent requests altogether, either because it misunderstood their plain language, or for some other unknown or unstated reason. Counsel further did her client no favors by failing to catch obvious material errors in the VA's first declaration (*e.g.*, the mischaracterization of the scope of Mr. Alford's September request), echoing those errors in her Motion, and later attempting to dismiss them as typographical errors, which, if that were true, also should have been caught.

To be sure, the Court is not of the impression that Mr. Alford has been the VA's most easy-going client. It appears that, over the years, the VA has provided him with certain benefits that he may have failed to take full advantage of, and yet he expresses surprise and frustration at the VA's reluctance to continue his participation in a program even though he may not have followed-through with certain obligations he incurred through his participation. But before the Court is a FOIA action, not an appeal for the termination of benefits, and under the FOIA, the government defendant is the party with the burden to show compliance with the administrative burdens that law places upon it.

To that end, this matter arrived before the Court because of the VA's refusal to respond to Mr. Alford's third FOIA request - that of September 8, 2016. The VA had a statutory duty to respond in some fashion to that request by October 7, 2016. *See* 5 U.S.C. § 552(a)(6)(A). By operation of law, Mr. Alford is deemed to have exhausted his administrative remedies in light of the VA's failure to communicate with him. *See id.* at § 552(a)(6)(C).

This Court may award litigation costs reasonably incurred in a FOIA cases "in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). One way for a FOIA plaintiff to establish his eligibility for costs is via a "voluntary or unilateral change in position by the agency..." § 552(a)(4)(E)(ii). This 'catalyst' theory of eligibility for costs is sometimes explained in terms of reasonable FOIA costs and fees being merited if "the litigation substantially caused the requested records to be released." *ACLU v. U.S. Dep't of Homeland Sec.*, 810 F.Supp.2d 267, 274 (D.D.C. 2011) (internal quotation marks omitted).

In addition to being eligible for costs, a plaintiff must also be entitled to them. *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1495 (D.C.Cir.1984). In a typical FOIA case, entitlement "entails a balancing of four factors: (1) the benefit of the release to the public; (2) the commercial benefit of the release to the plaintiff; (3) the nature of the plaintiff's interest; and (4) the reasonableness of the agency's withholding." *Id.* at 1498. The balancing of these factors is subject to wide discretion by the district court, *see Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1094 (D.C.Cir.1992), but the D.C. Circuit has explained that the first three factors, which do not on their face favor the awarding of costs here, are meant to "assist a court in distinguishing between requesters who seek documents for public informational purposes and those who seek documents for private advantage." *Davy v. CIA*, 550 F.3d 1155, 1160 (D.C. Cir. 2008) (emphasis added).

This, however, is not a typical FOIA case. Mr. Alford did not intend this matter to fall under the FOIA. Rather, he sought to exercise rights that he claims to have as an accredited representative of the Military Officers Association of America, *see* [10] at *98, to conduct an administrative review of his records. *See* [7-3] at *2. The VA never explained to Mr. Alford, nor to the Court, why Mr. Alford could not examine his records via the non-FOIA process, as he alleged he has a right to do. Instead, it was the VA that treated Mr. Alford's request to review his

records as a FOIA request and then, aware that Mr. Alford was seeking his records for the purpose of assisting his preparation of an appeal from the VA's termination of his benefits, which has a deadline imposed by the VA, the VA became non-responsive at a critical juncture in the parties' correspondence. Under these circumstances, Mr. Alford did not seek to leverage the FOIA "for private advantage" in the way envisioned in *Davy*. With the first three factors awash, the Court will apply the fourth factor as it relates to the VA's unreasonable intransigence with respect to Mr. Alford's September 2016 request.

"The mere filing of the complaint and subsequent release of documents" is insufficient to show a causal nexus. *Weisberg v. DOJ*, 745 F.2d 1476, 1496 (D.C. Cir. 1984)). Rather, it must be established that it is "more probable than not that the government would not have performed the desired act absent the lawsuit." *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 202–03 (D.D.C. 2016) (applying *Pub. Citizen Health Research Grp. v. Young*, 909 F.2d 546, 550 (D.C. Cir. 1990) to the FOIA context). Here, the VA admits it initially made a determination that Mr. Alford's request did not merit a response. First Grant decl. at para. 17. It was only the onset of this litigation that caused it to respond, and explain that there, in fact, were no IWRPs created for Mr. Alford after the 2010 plan expired, despite the normal practice of updating the plans annually. *See id.* at para. 19 (discussing annual review dates). The Boolean change in the VA's approach - going from wholly non-responsive, to providing a reasonably detailed explanation as to why there were no documents responsive to Mr. Alford's September request, for the purposes of this case where Mr. Alford was subject to agency-imposed deadlines in a related matter, represents the kind of changed course that merits an award of costs to Mr. Alford, at least to the extent of his filing fee.

In addition, the VA has at this stage lost its summary judgment motion as to Mr. Alford's first two requests. It also has failed to make any record whatsoever as to its processing of his fourth FOIA request. The facts of this case therefore merit "compensation for enduring an agency's unreasonable obduracy in refusing to comply with the [FOIA's] requirements." *LaSalle Extension Univ. v. F. T. C.,* 627 F.2d 481, 484 (D.C. Cir. 1980). The Court accordingly awards Mr. Alford the cost of his filing fee for this lawsuit.

D. Motion for Leave to Amend Complaint to Request a Hearing

On May 22, 2017, Mr. Alford filed a motion to leave to amend his complaint a second time, merely to request a hearing. Federal Rule of Civil Procedure 15(a)(2) provides, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The Court does not find relief under Rule 15(a)(2) to be appropriate here. The path ahead in this matter appears to the Court to be rather straightforward – the VA must reconcile why it did not search its CWINRS database with respect to Mr. Alford's first two requests; the matter of his third request has been resolved; and his fourth request, clear upon its face, remains outstanding. The Court will order the defendant to file a status report as to the outstanding issues within 30 days.

Despite the VA's and counsel's numerous unforced errors in this case and the Court's own frustrations laid bare in this Opinion, the Court does not see evidence of bad faith that might merit a hearing. Scheduling a hearing at this juncture would be unlikely to bring any more swift or complete resolution to the issues outstanding in this case, and it does not appear to the Court that justice requires an amendment in this instance.

## IV. Conclusion

For the foregoing reasons, it is hereby:

ORDERED that defendant's Motion for summary judgment [7] is DENIED with respect to Mr. Alford's FOIA requests of May 18, 2016, June 2, 2016, and GRANTED with respect to Mr. Alford's FOIA request of September 8, 2016. Summary judgment will be entered accordingly. It is

FURTHER ORDERED that the defendant's Motion to dismiss [7] at *1 n.1 Mr. Alford's fourth FOIA request is DENIED. It is

FURTHER ORDERED that the defendant shall pay to Mr. Alford the sum of $400 in restitution for the filing fee for this lawsuit. It is

FURTHER ORDERED that the defendant shall file status report as to its search for and production of any additional information responsive to Mr. Alford's first and second requests, and its processing of Mr. Alford's fourth FOIA request, within 30 days of the date of this Order.

SO ORDERED.

Date: 9/28/17

Royce C. Lamberth
United States District Judge